# **EXHIBIT A**

IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

| | |
|---|---|
| **C. MORROW** ) <br> 36205 E. Pink Hill Rd. ) <br> Oak Grove, MO 64075 ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **GUITAR CENTER STORES, INC.** ) <br> 4001 N. Norfleet Rd. ) <br> Kansas City, MO 64161 ) <br> ) <br> Serve: C T Corporation System ) <br> 120 S Central Avenue ) <br> Clayton, MO 63105 ) <br> ) <br> **Defendant.** ) | Case No. <br><br> **JURY TRIAL DEMANDED** |

## PETITION

### I. Preliminary Statement

1. COMES NOW, Plaintiff, C. Morrow, by and through his attorneys of record, Kevin Baldwin, Eric Vernon, Sylvia Hernandez, and Robin Koogler of Baldwin & Vernon, and brings this cause of action against Defendant Guitar Center Stores, Inc., hereinafter referred to as "Defendant Company." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and costs and attorneys' fees in accordance with R.S.M.o §213 *et. seq.*, and under Missouri Common Law for Defendant Company's conduct and actions taken against Plaintiff.

### II. Jurisdiction

2. Plaintiff is alleging claims of employment discrimination and retaliation under the Missouri Human Rights Act (MHRA), 213.010, *et seq.*, R.S.MO., for discrimination based upon disability and hostile work environment.

3. Jurisdiction is invoked pursuant to §213.010 *et seq.* R.S.MO. A Right-To-Sue letter was

issued by the Missouri Commission on Human Rights (MCHR) on June 10, 2021. The Right-To-Sue Letter, including a copy of Plaintiff's original charges filed with the Equal Employment Opportunity Commission and the MCHR, is attached hereto as exhibit 1 and the facts and circumstances stated therein are hereby incorporated as if fully set forth herein.

4. The Plaintiff, based upon reasonable belief at this time absent discovery, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive and equitable relief, as well as punitive damages, pursuant to §213.010 *et seq.* R.S.MO. Costs and attorneys' fees may be awarded pursuant to §213.010 *et seq.* R.S.MO. and are requested by Plaintiff.

### III. Venue

5. This action properly lies in the Circuit Court of Clay County, Missouri, pursuant to §213.010 *et seq.* R.S.MO., because the claim arose in this judicial district, and because unlawful employment practices were committed in this judicial district.

### IV. Parties

6. Plaintiff is a resident of the United States residing at 36205 E. Pink Hill Rd. Oak Grove, MO 64075.

7. Defendant Guitar Center Stores, Inc., hereinafter referred as "Defendant Company," is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 100 regular employees. Defendant Company is a corporation, (containing within its charter the requisite authority to sue and be sued), and does business in this judicial district, doing business at various locations located within Clay County, Missouri, at relevant times referred to herein, and specifically at 4001 N. Norfleet Rd. Kansas City, MO 64161. Defendant Company is

an employer within the meaning of §213.010, *et seq.*, R.S.MO. Defendant Company is subject to the MHRA's prohibition on employment discrimination and retaliation for its employees.

8. Prior to filing this Petition for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights to no avail and exhausted all required administrative procedures prior to filing this Petition for Damages.

**V. Facts Common to All Counts**

9. Plaintiff, C. Morrow, is a 25-year-old male, who began working for Guitar Center Stores, Inc. ("Defendant Company") on May 1, 2018.

10. Plaintiff was subjected to discrimination based on his disabilities and was subjected to a hostile work environment.

11. Plaintiff began working for Defendant Company as a packer on or about May 1, 2018.

12. On May 2, 2018, Plaintiff informed his supervisor, Brian Shank, of his disabilities.

13. Plaintiff's disabilities include Asperger's syndrome, bi-polar disorder, irritable bowel syndrome, and anxiety disorder.

14. Over the next year or so, Plaintiff informed other managers and supervisors of his disabilities on an "as needed" basis.

15. These managers included Chris Thornhill and James Rose.

16. In June of 2018, after Plaintiff had notified Bryan Shank of his disabilities, he began treating Plaintiff differently.

17. Plaintiff would tell Bryan Shank about how he was being mistreated by his supervisors and Bryan would respond with comments like, "you're a man, take it like a man."

3

18. When Plaintiff tried to report issues on the job, Bryan Shank would cut him off and say things like, "no, I control this conversation."

19. In February of 2019, Bryan Shank went to A shift and James Rose took his place.

20. Plaintiff's disabilities became a more significant issue when he was assigned to the "bulk area" of the warehouse, which is further from the restrooms.

21. Plaintiff had advised his supervisors of his disabilities several times prior to being moved to the "bulk area."

22. Plaintiff asked to be reassigned to the front of the warehouse where he could avoid harassment by Kaitlin Brown and be closer to the restroom.

23. This was a reasonable request for accommodation.

24. Plaintiff's request was denied.

25. In around September or October of 2019, Amber Pilcher (Bulk Lead) made a report about Plaintiff to Kaitlin Brown (Bulk Supervisor), who then angrily confronted Plaintiff and Jeff McEntire.

26. Kaitlin Brown stated, "4 different people from 4 different departments said [you] aren't working."

27. Plaintiff knew that this wasn't true as there were only bulk drivers on duty that night.

28. Plaintiff reported this issue to Chris Thornhill and Jamie Rose.

29. After Plaintiff complained, Kaitlin Brown began retaliating against Plaintiff by giving him the silent treatment and by moving him up front so that she could keep an eye on him.

30. Plaintiff reported this to Bridgett Mitchell (HR Manager) and David Russell (Senior Operations Manager) who stated that Kaitlin Brown, "does everything ethically," which was untrue.

4

Case 4:21-cv-00721-DGK   Document 1-2   Filed 10/04/21   Page 5 of 11

31. This comment indicated to Plaintiff that there would be no investigation.

32. Plaintiff then reported an issue with John Epley to Human Resources.

33. In retaliation for reporting this to Human Resources, on or about January 14, 2020, David Russell issued Plaintiff a final written warning for making "frivolous" complaints.

34. Plaintiff refused to sign the final written warning because it violated the progressive discipline policy; Plaintiff felt he was being discriminated against on the basis of his Asperger's Syndrome.

35. Plaintiff then contacted the home office and the director of human resources, Kristen Jaramillo.

36. Kristen Jaramillo asked Plaintiff how he wanted the issue to be resolved, to which he responded that he wanted the final written warning removed from his file.

37. After contacting the home office, Chris started pestering Plaintiff about not reaching his numbers.

38. Plaintiff again contacted the home office and asserted his rights to be free from workplace discrimination on the basis of his disabilities and that creating and subjecting him to a hostile work environment was illegal.

39. Plaintiff specifically reported that all of the focus on "not reaching his numbers" was harassment and created a hostile work environment because the instigators were aware of his disabilities and knew that said disabilities would make it difficult to work through harassment.

40. In response to this second report to the home office, Plaintiff was called into the Human Resources office and told that he needed to fill out reasonable accommodation paperwork.

41. Plaintiff was provided with the paperwork a week or so later and got his Doctor's Nurse Practitioner to fill it out and return it in February of 2020.

42. Plaintiff was constantly harassed prior to the accommodations taking place.

43. Approximately a **week** before Plaintiff was terminated, Defendant Company gave Plaintiff his requested accommodations including adjusting his numbers required and allowing him to remain stationed in the front of the warehouse, near the bathroom.

44. On or about February 26, 2020, David Russell called Plaintiff at 3PM saying that there had been several complaints about his storyline, "Avenging Angel" and that it somehow violated their sexual harassment and violence policy, and Plaintiff was terminated.

45. Amber Pilcher, Marissa Mahurin, Jeff McEntire, Jarell Brown, Brendan Mitchell and Moses Rombe are the only ones who received Plaintiff's storyline and it was sent to their personal e-mails.

46. Amber and Jeff had been receiving it since 2018 and Brendan, Jarell and Moses had been receiving it since 2019.

47. The last time that anyone received Plaintiff's work was in January of 2020.

48. It is clear that Plaintiff's coworkers made these complaints in an attempt to get Plaintiff terminated and in retaliation for making reports to Human Resources.

49. Plaintiff did not share his storyline at work, the coworkers who received them had requested that Plaintiff share them, and they were warned about the content of the storyline prior to receiving it.

50. It is clear that this became an issue solely because Defendant Company needed a reason to fire Plaintiff.

51. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses as a direct result of Defendant Company's conduct.

52. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant Company's conduct.

53. Defendant Company and its managers and other employees actively engaged in discrimination against Plaintiff with malice or in reckless indifference to her right to be free from such discrimination under the MHRA.

**VI. Causes of Action**

<u>**COUNT I**</u>

<u>**DISCRIMINATION BASED UPON DISABILITY/PERCEIVED/REGARDED AS DISABELED AGAINST DEFENDANT COMPANY**</u>

54. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

55. At the time of the unlawful employment actions, Plaintiff was an individual with a disability and, as such, was a member of the protected group under §213 *et seq.*, R.S.MO.

56. Defendant Company perceived Plaintiff as being disabled and that perception was a motivating factor in the decision to terminate Plaintiff.

57. At all times alleged herein, Plaintiff was an individual with a disability and was capable of performing the essential functions of his job with or without reasonable accommodations.

58. At the time these actions were taken by Defendant Company, Defendant Company knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

59. Defendant Company's actions were unlawful employment practices in violation of the MHRA.

60. Plaintiff has been damaged by Defendant Company's unlawful employment actions.

## COUNT II

## RETALIATION
## AGAINST DEFENDANT COMPANY

61. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

62. Plaintiff hereby alleges claims of retaliation against Defendant Company.

63. Defendant Company's actions, as noted above, constituted retaliation against Plaintiff in violation of the MHRA.

64. Plaintiff's actions of complaining of what he believed to be acts in violation of the Missouri Human Rights Act as set forth herein was a motivating factor in the Defendant Company's decision to retaliate against him by treating him differently, subjecting him to a hostile work environment, subjecting him to a heightened level of scrutiny, setting him up to fail, and/or terminating him from his employment with Defendant Company.

65. At the time these actions were taken, Defendant Company knew that their actions were unlawful, and Defendant Company's actions were undertaken maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

66. Defendant Company's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of retaliation against the Plaintiff that culminated in his termination.

67. Plaintiff has been damaged by Defendant Company's unlawful employment actions in violation of the MHRA.

## VII. Prayer for Relief

68. Wherefore, Plaintiff prays that this Court:

   a. declare the conduct engaged in by Defendant Company to be in violation of Plaintiff's rights;

   b. enjoin Defendant Guitar Center Stores, Inc., and its managers/supervisors from engaging in such conduct;

   c. restore Plaintiff to his rightful position with Guitar Center Stores, Inc. or, in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

   d. award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period or front salary and benefits accrual;

   e. award Plaintiff compensatory, punitive and liquidated damages against Defendant Company;

   f. award Plaintiff damages for emotional pain and suffering;

   g. award Plaintiff his costs and attorneys' fees; and

   h. grant such other relief as it may deem just and proper.

### DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.


Respectfully submitted,

By: /s/ *Robin Koogler*
Kevin Baldwin, MO Bar No. #49101
Eric Vernon, MO Bar No. #47007
Sylvia Hernandez, MO Bar No. #70670

Robin Koogler, MO Bar No. #71979
**BALDWIN & VERNON**
108 S Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
Robin@bvalaw.net
ATTORNEY FOR PLAINTIFF

10